Good morning. We have five cases on the calendar this morning. A veterans case, two cases from the Court of Federal Claims, a Patent Office case, and an employee case. The employee case and one of the claims cases are being submitted on the briefs and therefore are not being submitted to the Department of Veterans Affairs, 2015-7044. Mr. Carpenter. Thank you, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Gloria Cleaver, the widow of the veteran James Lee Cleaver. This case, Your Honor, involves the question of the legal standard to determine whether or not a claim has been reasonably raised in a proceeding before the Department of Veterans Affairs. In this case, the Board used the wrong legal standard based upon an incorrect legal instruction that came from the Court in its 2011 remand. I'd like to direct the Court's attention... Isn't this basically whether an informal claim had been made and isn't that a fact question? No, Your Honor. It's a question of law because this Court, in a series of cases, determined what the legal standard is for determining whether or not a claim has or has not been legally raised. That is not a factual matter. Well, the proper legal standard for determining whether a claim has been raised is clearly a legal question. Yes. But whether a claim has actually been raised is a fact question. I understand your argument is that they applied the wrong legal standard in determining that fact question. Isn't that your argument? Yes. But with respect, Your Honor, I'm not sure how you make that distinction. Well, if they used the right legal standard in determining whether a claim had been filed and they had determined under the right legal standard that a claim had not been filed, then that would be a factual question we couldn't review. But in your view, they applied the wrong legal standard and I think you have a pretty good point here in the language they're using. Yes. But it's a different question than whether a claim had actually been filed or not. Well, clearly, no claim had been filed on the mental condition in this case. In this case, the original application that was made was for a knee condition. But isn't that the question, whether a claim had been filed? No, Your Honor. I understand you agree. Well, okay. I want to see where we're going with this, because I'm not sure where you are. It seems like you agree that no formal claim has been filed and I know borne out by the record. What we're arguing about is whether an informal claim had been filed. Well, Your Honor, I think it's a mistake to use the characterization of informal claim, whether or not a claim was raised by the evidence. Informal claim, and I think this is where the lower court got into difficulties, because it used the definition of informal claim as defined by the VA in its regulations. This is a claim that is raised by the veteran and by the evidence, by his actions before the agency and the medical evidence. And those are to be liberally read, not to be determined whether or not they are clearly and unmistakably presenting a claim. Right, right. I get you on that. But there still has to be a claim raised. That's correct. He has to have filed a claim in some sense. Are you trying to suggest that the requirements that a claim be in writing, whether a formal claim or an informal claim, don't apply? No, Your Honor. They apply, but they apply in this case with the original application. It's about everything that happens after that original claim has been filed. And it's on July 12, 1973. If you look at the record at page 53... Wait, let me see. I think I see where you're going, but let me make sure. You agree that that original formal claim he filed didn't claim... A mental condition. A mental condition. Correct. And so what we have to look is see whether he claimed the mental condition at some point later in time. Are you saying that it can, once he files a claim on any condition, the court has the obligation to see whether he has... Whether the evidence or any of his statements suggest that there is a basis in the record for additional conditions which should be compensated. But that's fact-based. In the record, as you say. Whether there's evidence in the record. Well, but with respect, Your Honor, it's the legal standard that was used to determine whether or not that factually existed. The distinction that I was trying to make with Judge Hughes is that in reviewing the decision, the decision itself in 1973 does not identify any specific claims. And what it says is the service-connected conditions shown below. And then it describes those based upon the medical record. And then the finding is that there is entitlement to service connection for his knee, for a scar, and a fractured toe. Neither the scar nor the fractured toe were part of the original application. Well, sure, but... They were reasonably raised by the evidence of record. But the VA can always go beyond the claim and grant additional service condition connections. But it seems like you still have to, if they choose not to, you still have to raise the claim with them. I think it seems to me like you're taking Moody and Roberson in those cases a little further than even those cases go. Because those cases suggest that the claim itself reasonably raised the service connection condition here. I mean, Roberson, I think, is the TDIU claim. It's where it said, I have this service-connected injury, but I also want all the benefits I can get. And so that reasonably raised the TDIU claim. But that's assuming that that claim can be construed to actually raise that. And it seems like you're saying the 73 claim doesn't raise the mental condition, but subsequent events not connected to anything in writing can reasonably raise the claim for mental condition. Is that your position? That is correct, Your Honor. What's your support for that case? Support in law or support in the record? Support in law. I mean, because I think it sputs up against the requirement that claims have to be in writing. No, Your Honor. And that's the difference between an informal claim under 3.155, which is putting the VA on notice of a desire to file a claim. And in that case, there must be a clear expression of a desire. Here we're talking about once the process has begun, then the VA is supposed to be the veteran's advocate. They are supposed to be fully developing the record, and if one reads the 1973 decision, there is more discussion about the mental condition than any of the physical conditions. And yet, on its face, we do not see a definitive decision one way or the other. And then when we look at the notice, there is notice to the veteran of the awards, but no mention whatsoever of the decision. Then we have to look back at the record. The record then demonstrates that in the 1973 exam, the patient talked about his emotional illness. There's a VA record in May of 73 that gives a provisional diagnosis of paranoid schizophrenia.  I get it. I understand what you're saying. But isn't that a little problematic in terms of the way the timing works for benefits? Because it essentially, because everything is timed off either the date of the claim or the date the condition arose, whichever is later. And the way that's been applied is for the date the claim is, you look to an actual claim. But you seem to suggest that once you file a claim for service connection for any condition whatsoever, in the course of treatment of this veteran, when something becomes apparent, we should consider that a claim too. But that makes it very amorphous as to when the effective date is. Well, with respect, Your Honor, I think it's the fact that so far we are using imprecise descriptions. What we have is not a claim. No claim is made. What is made is an application for compensation. When the veteran fills out the 526, he asks the VA to award compensation based upon his or her service-connected disability. So you're asking us to go beyond Roberson and basically say that any time a claim is filed upon any condition, the VA is obligated to consider that as a claim for service connection for any possible disease or injury that may become apparent during the course of treatment. What I am asking this Court to do is to affirm the decision in those lines of cases that the VA has an affirmative obligation to liberally read the record. But I don't think that's what those cases say. They say you have to liberally read the claim filed. That's right. But not give subsequent record to determine whether something in the subsequent record fleshes out that claim. Roberson was just about the claim. Moody was just about whether a claim had been filed. With respect, Your Honor, it's not about the claim. It's about the issue. In Roberson, it was about the additional issue of extra scheduler that had to be considered and was not considered as part of the totality. My understanding was that the reason that had to be considered was because the claim that was filed noted these conditions, noted that it completely negated the veteran's ability to seek employment. And so that claim itself, even though it may not have said it in terms of TDIU, reasonably raised TDIU. And that's what we were looking on, that the claim reasonably raised it. In this case, we have the issue of whether or not there is a service-connected disability from a mental condition in the one-year window following discharge from service for a chronic mental illness. And I see I'm getting into my rebuttal time, but I'd like to direct the Court's attention to the August 1990 rating decision, which is in the record at 60, because I think it's very important for this Court to read that decision in context. That decision relies exclusively on the 1973 medical evidence. Before you go away, can I ask you just one more question? You agree that the 73 claim doesn't raise a mental condition claim. The application. The application in 73. Is there any other document in writing you can point to that the veteran raised this mental condition claim? In the March 1973 VA psych examination, the examiner says, the patient says of his emotional illness. So in my view, he is telling the examiner that I have an emotional problem, and then when you read through that, and if I could just finish my thought about 1990. In 1990, when they grant the benefits, there is no contemporaneous examination. In fact, they note that the veteran couldn't be examined because he was incarcerated at the time. Therefore, there is no difference in the record in 1990 than there was in the record in 1973. And this Court has adopted the implicit denial doctrine, and clearly what we have here is an implicitly denied decision on mental condition that is fully laid out in the 1973 decision. And then when they reopen the case, and I'm not quite sure what the new and material evidence is because they don't identify any new and material evidence, they grant the benefit. I reserve the balance of my time. Thank you. We will save it for you, Mr. Carpenter. Mr. Norway. May it please the Court. I'd like to go straight into the... Can I actually just direct you straight to the Veterans Court opinion at page 9 of the addenda? Because it seems to repeat the same error that the Board made in requiring the veteran to show that a claim was filed by considering a medical condition as clear and convincing evidence, clear and unmistakable evidence. You agree that that's not the right standard, don't you? Correct, Your Honor. The Board, sorry, the Veterans Court then goes on and talks about the standard that should be applied to the factual predicates, the factual determinations of whether a claim was filed would be raised on a full and sympathetic reading. But how do we know what standard they're applying? Because at various points throughout this opinion, they either say the veteran had to clearly establish that there was an error, which seems to be referring to this clear and unmistakable standard, or they do, at other points, parrot the correct standard. Indeed, the 2012 Board decision is a little confusing in that, and the language that the balance really focuses on in that opinion that talks about the Q standard can't really be divorced from the context not only of that decision, what the Board actually did. And if you look at it, the Board went through every piece, every record that was before the regional office in 1973. So it was providing the full and sympathetic reading of all the evidence that the appellant here is asking for. And also, you can't divorce it from the context of the prior proceedings where the Board initially, and this is in the 2009 Board decision, looked at just the full and sympathetic reading of the original claim. Then in 2011, the Veterans Court recognized that there was a suggestion in the medical records that another claim may have been filed, but was not of the record. And that's why it remanded back to the Board for determination, a factual determination of whether an informal claim was in fact filed, but was not of record. And that is the reason. But that's the problem with this. I mean, the Board made a factual finding, but it seems to have made it under an improper standard. And so how can we ignore the fact that there was legal error in that standard? It's the way the Board applied it. And the Board clearly recognized that it did have... I don't know. I mean, you know this paragraph that I'm talking about on page 27 of the addendum, which is the Board's opinion. It repeats that same language. In order to find that there was cue, the evidence must be more than suggestive, even strongly so. It must be clear and unmistakable that the VA had a claim before it. That's not the right standard, right? Correct. There is a requirement for the full and some depth reading. I mean, you have to show clear and unmistakable error in the decision itself. But whether a claim had been filed or not is just done under a normal factual standard, right? Even in the context of a cue claim, you look at the record and see whether a claim had been filed. Right. And that is the teaching of Moody and Semraj. The determination as to whether there was cue, that decision is made in light of the standards that typically govern the final decision. But how do we get around that error? We look at what the Board actually did. And in this case, it went through every piece of evidence. And it commented on the statements that were in those records. And it made a factual determination that even in view of all of those, there could be other reasons why a mental exam was issued. And also, in this case, none of the records before the regional office in July of 1973 contain a diagnosis of a mental disorder. There is a suggestion that something might be there. But there is no evidence in the record to say that he had a mental disease. There was the March record, which said there was not enough information for her to make a diagnosis. If a veteran had raised in his conversation with the doctor that he had a mental condition that was service-connected, which was then noted in the doctor's report and then sent to the RO, does that reasonably raise a claim for service connection for a mental condition? Not under the VA regulations for an informal claim, 3.155. Those regulations require the communication to be in writing and to be from the claimant or a limited category of individuals besides the claimant. And a VA doctor is not one of them? The VA doctor is not one of the enumerated people in 3.155. I mean, that regulation requires that the written communication be from a claimant, his duly authorized representative, a member of Congress, or some person acting as his next friend of the claimant. And it goes on further in subsection B to require a power of attorney to have been executed at the time the writing was made. So for practical purposes, you typically would not see a VA examiner who would meet all of those requirements of the regulation. How do you respond to the appellant's argument that Moody and Roberson require the board to not just look at the original application, but also look at later record evidence to see whether a claim has been raised? Well, in order to raise a claim, number one, the statutory system is designed, and this is in 5107, the claimant has the responsibility to present and support a claim for benefits. So it has to make a claim for a benefit. It has to put the VA on notice that he wants a claim for that so it can then adjudicate that claim. And the problem with the appellant's argument here is that if the requirements of an informal claim can be avoided in that way, then the VA will have a very difficult time in actually trying to figure out what claims are being made when. And the statute 5107, and then there's also 5101, provides the Secretary of the Authority to prescribe the requirements for making a claim, and the Secretary has done that in the regulations. And for informal claims, claims that were not formally made, it's in 3.155 paragraph A. So your view is that Moody and Roberson have to be read in light of that? Correct. So in order for the VA's duty to assist and adjudicate the claim, there first has to be a claim made. So on the jurisdictional grounds, we can see that the legal standard, whether the correct legal standard falls within this court's jurisdiction, but we're really making the argument that the arguments here are essentially disputes with the factual determinations of the board and the veterans court. And for those reasons, this court should dismiss them. And also, when it comes to the second legal argument on – Again, how do we know that those factual resolutions by the board would have come out the same way under the correct legal standard? You just say the rest of the opinion makes that clear? Correct, Your Honor. That sounds to me an awful lot like a harmless error argument. Did you make that argument in your brief? We did not explicitly make a harmless error argument, Your Honor. We made the argument that the board applied going through its opinion, the board applied the correct standard, that it did conduct a synthetic reading. So on the second issue, we asked the court to, on credential grounds, decline to exercise jurisdiction over the issue of interpretation of the VA regulations on the grounds that the underlying factual determinations have already been made. And because they've already been made, the ultimate outcome of this case would not be affected by this court addressing and even adopting the view of the appellant that the informal claim can be made in a medical record by the medical record recording statement. I don't really understand that at all. I mean, if we found as a matter of law that recognition of a veteran's claim or a veteran's statement to a medical professional that's put into a VA medical report can be an informal claim, then we have that document in the record. And it seems like that would suggest that to the extent the board applied the wrong legal standard, that they should reconsider that. So it seems to me we do have to decide whether a medical record can be an informal claim or not. Well, I guess that depends upon the court's determination of the first legal issue or the first issue on appeal. Well, I think there's very little doubt that it's pretty close to legal error and the standard applied by the board and even applied by the Veterans Court. But the real question is whether there's anything in the record that, even given that legal error, you could tie a formal or informal claim to. And I don't think the 73 claim does it, but if we find that a doctor's report can, that could be it. So why can't that medical report be considered an informal claim? Because the medical report itself does not qualify. It doesn't meet the requirements of 3.155. It is not a written communication from the claimant. Well, it is a written communication communicating, I mean, read liberally, the claimant's desire to seek service connection for his mental condition. Right, but the written communication was from the VA medical examiner, not from the claimant. And the text of the regulation requires the communication to be from the claimant or one of the... Was it a communication or a recording? The text of 3.155 refers to a communication, but at this court... Which implies two parties, the communicator and the communicatee. Correct. Was there a communicatee here or simply a recording of the fact? Well, it would have to be... The reason for the claim, and this is 5107, it's the claimant's responsibility to make, to present the claim to the benefit, to the benefit side of the VA. So to the extent that you look at 1.55 and say that there has to be a communication between, we have defined in the regulation who it's from, to the benefit side of the VA. And when you have a medical record, that's not the folks who will be deciding the benefit. But the record was forwarded to the RO, wasn't it? That is correct. So it seems to be splitting hairs. I mean, if the veteran had gotten a copy of this medical report and forwarded it to the VA, the RO, sorry, and circled the statement that said veteran is seeking benefits based upon mental condition, that would qualify, wouldn't it? Well, that would be a communication from the claimant to the benefits. So the fact that it's sent from the veteran rather than the doctor is what makes all the difference here. Right, and that makes sense administratively when you're looking at all of these cases. The VA has to have some way to focus in on the exact claims for benefits that the claimant is looking for. And that's what this regulation does. It allows them to look through a limited number of documents, just not any document. And if you see in some of the cases, and I like the- It seems like an awfully difficult burden to place on a veteran who is obviously suffering from a serious mental disease. Well, Your Honor, they do have to present a claim. And in this case, it's an original claim. VA did order a complete medical exam and was doing that. And before they could come to a decision about whether or not he had a mental illness, he walked away. And so to the extent there's a duty to assist, I mean, that's more than just a one-way street. I think the VA was trying to do that here. They just did not get to a point where it could make a decision where it could say, like it did with the scar and the fingers, that there was a condition. There was no diagnosis before, in any of the records, before the July 1973 Regional Office decision. And I see my time is up. If there are no more questions, for these reasons and the reasons you briefed, we ask that the Court affirm the judgment of the Veterans Court. Thank you, Mr. Nowak. Mr. Carpenter has a little rebuttal time. May it please the Court, the VA's attempt to use 3.155 is simply not appropriate. 3.155 is intended to be a beneficial regulation for a Veteran who is seeking to put the VA on notice that they want to file a claim before they've made an application. That doesn't apply in this case. There was an application in place. And then the VA completely disregards the reality that they took an application on a knee and granted it for two additional conditions for which there was no meeting of their 3.155 requirements. Now, you can't have it both ways. You can't adjudicate two claims and then the majority of your discussion in the rating decision is about the mental condition and say, we didn't make a decision on the mental condition. They most certainly did. They made an implied denial of that condition. And we know that because the record in 1990, they took up the exact same evidence with no diagnosis of schizophrenia in the record that they quoted as the VA would suggest. I would suggest to you that the multiple references to provisional diagnosis of schizophrenia and a diagnosis that was affirmed in May of 1993 by the VA medical record of schizophrenia is a distinction without a difference because we are dealing with a presumptively service-connected psychosis. The criteria for a presumptively service-connected psychosis that develops within the one year following discharge, which is the time frame that we're in here, requires only symptoms and manifestations to a degree of 10% or more. Clearly, the symptoms that were described of this mental illness, of disturbing hallucinations, were at a level of 10% or more. There should have been an award in 1973. I think you referenced that you think that they implicitly denied the mental condition claim. That would be a decision that you'd have to attack for Q, right? Which is precisely what they did. And so you think that the record clearly establishes that that decision was Q? Yes. Yes. Okay. Any further questions? Thank you. Mr. Carpenter, we'll take the case under advisement.